No. 32,477

The State of Kansas, ex rel. Clarence V. Beck, Attorney General, Appellee, v. The National Bank of Topeka, Appellant.

(52 P. 2d 1199)

Opinion filed December 7, 1935.

Thomas F. Doran, Clayton E. Kline, Harry W. Colmery, M. F. Cosgrove, James E. Smith, E. H. Hatcher and Frank H. McFarland, all of Topeka, for the appellant.

Clarence V. Beck, attorney general, John G. Egan, assistant attorney general, both of Topeka, Fred M. Harris, of Ottawa, and D. Arthur Walker, of Arkansas City, for the appellee.

The opinion of the court was delivered by

Dawson, J.: This is an appeal from a judgment overruling a demurrer to an amended petition in which the state seeks to recover from the defendant bank the sum of $150,000, which it is alleged the bank misappropriated and misapplied to its own use out of state funds deposited in the bank.

This civil action is one consequence of a series of crimes pertaining to misuse of state funds, various chapters of which are chronicled in our reports, and which culminated in the incarceration in the penitentiary of two of the participants and the suicide after conviction of another. (State v. Finney, 139 Kan. 578, 32 P. 2d 517; State v. Boyd, 140 Kan. 623, 38 P. 2d 655; State v. Finney, 141 Kan. 12, 40 P. 2d 411.)

Before scrutinizing the state's amended petition it may serve to shorten that task, and aid us in determining the propriety of defendant's demurrer thereto, to summarize the least controversial facts and circumstances on which the state chiefly relies to fasten this large liability on the defendant bank.

On and prior to June 30, 1933, one T. B. Boyd was state treasurer.

On that date and for a long time prior thereto the National Bank of Topeka, defendant, was one of the selected state depositories in which the state kept its funds subject to check as its fiscal needs might require. The defendant bank, on June 30, 1933, held state funds on deposit to the amount of $1,282,177.57. Under its bond for the security of such deposits, it might lawfully have held state funds to the amount of $700,000. The Eureka Bank of Eureka, Greenwood county, was also a state depository, under a bond which would authorize it to hold state deposits in the sum of $90,000. Another bank which figures incidentally in the material matters of present concern was the Fidelity State and Savings Bank of Emporia.

In June, 1933, and for some time prior thereto, one Ronald Finney was a borrowing customer of the defendant National Bank of Topeka. He had obtained a loan from that bank in the sum of $150,000. As security therefor he had pledged bonds of various municipalities of the face value of $151,600, some of which, perhaps all of which, were either sheer forgeries or were the property of the school fund of the state of Kansas.

One W. W. Finney, father of Ronald Finney, was the president of the Fidelity State and Savings Bank of Emporia. Both these Finneys were influential with T. B. Boyd, state treasurer.

About June 30, 1933, the defendant bank became aware of the questionable character of the securities pledged to secure the Ronald Finney loan, and it demanded that the Finneys pay off that loan and withdraw those securities. This demand was summarily complied with as follows: Boyd, state treasurer, drew a check on the National Bank of Topeka for $150,000 in favor of the Eureka Bank and delivered it to W. W. Finney. He stamped it with the indorsement of the Eureka Bank, and also with the indorsement of the Fidelity State & Savings Bank of Emporia, and delivered it to the defendant bank as a deposit to the credit of the Emporia bank; whereupon the defendant bank charged against the state's deposit account the amount of the state treasurer's check, $150,000, and credited that sum to the Emporia bank, and charged against it the amount of Ronald Finney's note, and surrendered to W. W. Finney the questioned securities.

This devious transaction was initiated and consummated on June 30, 1933, without the state treasurer's check passing through either of the banks of Eureka or Emporia, and without there being any

bona fide transaction to warrant the drawing of a check against the state's deposit in the defendant bank in favor of the Eureka bank. The net result of this alleged legerdemain was the loss of $150,000 to the state of Kansas. And whether the defendant bank was a culpable coadjutor in this criminal transaction or merely the innocent instrumentality through which it was accomplished is the gist of this lawsuit.

Plaintiff's original petition, a document of six printed pages, was subjected to a motion to make more definite and certain. The motion was sustained in part, whereupon an amended petition, extending to twelve printed pages, was filed. (See addendum.) Various motions leveled at it were overruled, and defendant then demurred on two grounds:

"1. That the petition does not state facts sufficient to constitute a cause of action.

"2. That several causes of action are improperly joined."

This demurrer was overruled, hence this appeal.

Touching first on defendant's second ground of demurrer, that several inconsistent causes of action were improperly joined, the state asserts that but a single cause of action is pleaded, and only a single cause of action is intended to be pleaded; and that the elaborate recitals of its petition are merely the number and variety of facts which comprise it.

While the amended petition sets out at length certain matters which would suggest questions of law touching the regularity of the bank's status as a state depository and the limitations of that status, no liability is sought to be fastened on the defendant on that account. If the bank was insolvent and the safety of the state's deposit was a serious question, the distinct and peculiar liability of the bank as a trustee ex maleficio, if such it be, would assume an importance which does not exist in this lawsuit. Neither is liability sought to be fastened on the defendant because the Eureka bank had not qualified and could not qualify as a state depository for $150,000 if the state treasurer's check had been drawn in its favor for such a purpose; nor is it intended to fasten liability on the defendant on the ground that no legitimate transaction did or could arise which would justify a transfer of the vast sum of $150,000 of state funds from the Topeka bank to the Eureka bank. Either the defendant knowingly participated in the alleged scheme to rid itself of the Ronald Finney loan and the questionable securities pertaining to

it, through what was no more than a mere simulation of a treasury and banking transaction which had no legitimate basis, or it is not liable for the alleged loss of funds the state may have sustained. It is on this relatively simple issue of fact and the legal consequence which will attach thereto that the state's cause of action is based; and this court holds that the second objection raised by the defendant's demurrer to the state's amended petition was not well taken, and the trial court's ruling thereon was correct.

With the foregoing question out of the way, defendant's contention that the amended petition did not state a cause of action should not be difficult of solution. Bearing in mind that for the purpose of testing the sufficiency of the amended petition every material fact alleged and every reasonable inference justified thereby are to be construed favorably to the pleader, just what can be said to be wanting to a sufficient statement of the state's cause of action? The state alleges that through the alleged maneuvers of defendant and the state treasurer and W. W. Finney it has lost $150,000. It alleges that the various alleged steps by which that loss was caused were knowingly participated in by the defendant. It takes nothing from the materiality and gravity of these allegations for the defendant at this time to argue that so far as the defendant bank was concerned the transaction had the prima facie semblance of regularity. When this case is tried to a jury that argument may serve the defendant to good purpose. But for the purposes of this appeal, the defendant bank admits the truth of all the material allegations of plaintiff's petition. Therefore it would be a travesty on justice for this court to hold that it does not state a cause of action. It is needless in this opinion to stress the outstanding features of the petition which compel this conclusion.

It may be that the amended petition descends to unnecessary length in narrating probative details. That was partly brought about because defendant did not choose to join issues on the simpler, but essentially identical, cause of action alleged in the state's original petition. The amplifications of the state's pleading appearing in the amended petition may serve as matters of evidential detail for both plaintiff and defendant. In our view, so far as pertinent, such details might be introduced in evidence at the trial without being pleaded—for all the bearing they now appear to have on the vital questions upon which this lawsuit eventually must turn.

Plaintiff's petition stated a cause of action; it contains no misjoinder of causes; and the judgment of the district court is affirmed.

WEDELL, J., not sitting.

## APPENDIX

### "AMENDED PETITION

"The plaintiff for its amended cause of action against the defendant alleges:

"First. That Roland Boynton is the duly elected, qualified and acting attorney general of the state of Kansas, and is authorized to maintain this action in the name and for the use and benefit of the state of Kansas.

"Second. That the defendant, the National Bank of Topeka, is a corporation organized and engaged in business under the banking laws of the United States of America concerning national banking associations, and having its principal office and place of business in the city of Topeka, Shawnee county, Kansas.

"Third. That from about the month of January, 1929, until October 1, 1933, one T. B. Boyd was the treasurer of the state of Kansas, and as such was intrusted with and had the custody of the moneys and credits of said state, and by virtue of his said office, held the same in trust for the use and benefit of the state of Kansas, and which the defendant bank at said times well knew, and that as such treasurer he did deposit in the National Bank of Topeka large sums of money belonging to the state of Kansas, which were credited in said bank to the account of the treasurer of the state of Kansas; that said bank at said times well knew that the moneys so deposited belonged to the state of Kansas and should be withdrawn only upon proper authority and for proper public purposes of the state of Kansas.

"Fourth. That upon June 30, 1933, there was upon deposit in the National Bank of Topeka, and in the name of the treasurer of the state of Kansas, moneys and credits belonging to the state of Kansas in the sum of about $1,282,177.57, and said bank knew at such time that all of such moneys and credits were the property of the state of Kansas and subject to be withdrawn only for proper public purposes.

"That at all times herein mentioned and complained of the statutes of Kansas specifically, expressly and positively prohibited the depositing of state funds in any bank as a depository unless and until said depository had first submitted its written proposal to the board of treasury examiners of the state of Kansas, setting forth the amount of funds said bank desired, the rate of interest such bank would pay on daily balances, and agreeing that said bank, if given an award, would qualify and deposit the necessary securities (75-2401 R. S. 1923) to protect said deposits, which securities required the approval of the board of treasury examiners before any deposit should be made in such bank (75-2405 R. S. 1923), and the statutes further specifically, expressly and positively prohibited the awarding to any one bank of more than $300,000 as an active account or a total deposit of more than $700,000 in any bank either as an active, inactive or emergency deposit, and said statutes further specifically, expressly and positively prohibited any deposit at any time in any de-

pository of moneys, drafts, warrants, orders, checks or certificates of deposit (75-2405, R. S. 1923) in excess of the face value of these securities given by such bank, unless and until said depository should notify the treasurer of the state of Kansas of its election to come under the provisions of sections 2 and 4 of chapter 162, and section 1 of chapter 8, Session Laws of Kansas, 1933, that is, 9-306, 9-308 and 9-309 of the 1933 Supplement to the Revised Statutes, which permitted a depository, after such notification to the state treasurer, to deposit bonds and securities equal in amount and face value to 70 percent of the amount of such deposit; and the statutes of Kansas further provided that unless a bank designated as a depository so deposited the necessary securities within thirty days after being designated as a state depository, it should forfeit its award and right to accept deposits as a state depository (75-2405, R. S. 1923); and said statutes further required any bank desiring to become a depository of state moneys to agree in its proposal not only to qualify and deposit the necessary securities aforesaid, but in addition to faithfully perform its duties required of such depository (75-2401, R. S. 1923). The said statutes further provided that the state treasurer should publish in the official state paper a public notice showing the name of every bank making a bid, the amount of its paid-up capital, the amount bid for and the rate of interest offered, and that thereafter the state treasurer should publish in the official state paper a public notice containing a list of the banks which the board of treasury examiners had designated to receive awards and act as state depositories, together with the sum awarded in each case (75-2402, R. S. 1931 Supp.). Said statutes further provided that no bank should be awarded an inactive deposit for more than 100 percent of its paid-up capital and surplus (75-2402, R. S. 1931 Supp.). Plaintiff alleges the defendant well knew each and all of said statutory requirements and prohibitions and was bound by law to take notice thereof and to conform thereto.

"Plaintiff alleges that the defendant bank, on and immediately prior to June 30, 1933, had a paid-up capital of $500,000 and a surplus of $200,000 and the Eureka Bank of Eureka, Kan., had a paid-up capital of $50,000 and a surplus of $30,000, all of which the defendant well knew.

"Plaintiff alleges that on or about the first Monday in July, 1931, the board of treasury examiners of the state of Kansas met and caused to be prepared a notice stating that it would, within two months thereafter, receive proposals from the incorporated banks, both national and state, doing business in Kansas, for the deposit therewith of the public funds of the state in accordance with the provisions of the statute upon the subject of the deposit of public funds. Such notice was published for a period of thirty days in the official state paper, that is, The Topeka Daily *Capital*. In response to such notice, the defendant bank and the Eureka Bank of Eureka, Kan., among others, filed with the board of treasury examiners their proposals or bids for the deposit of public moneys.

"By such proposals the defendant bank bid for a deposit of state moneys with it in the active account, in the amount of $300,000, and in the emergency account in the amount of $400,000, and the Eureka Bank of Eureka, Kan., bid for such deposits in the inactive account in the amount of $40,000. and in the emergency account in the amount of $50,000, all of which the defendant well knew.

"Thereafter and on or about August 15, 1931, the board of treasury examiners met and made awards for the deposit of public moneys in banks, and awarded the deposit of such moneys in the defendant bank in the amount of $300,000 in the active account, and the amount of $400,000 in the emergency account, and awarded the deposit of such moneys in the Eureka Bank of Eureka, Kan., in the amount of $40,000 in the inactive account and the amount of $50,000 in the emergency account. On August 17, 1931, the state treasurer, as required by law, caused to be published in the official state paper, that is, The Topeka Daily *Capital,* a complete statement showing the name of every bank making a bid, the amount of its paid-up capital, the amount bid for and the rate of interest offered, which included such information in regard to the bids which had been made by the defendant bank and the Eureka Bank of Eureka, Kan. After such award, and on August 17, 1931, the state treasurer, as required by law, also caused to be published in the official state paper, that is, The Topeka Daily *Capital,* a public notice giving a list of the banks receiving awards and the sums awarded in each case, and such notice so published notified the public that the board of treasury examiners had awarded a deposit to the defendant bank in the active account in the amount of $300,000, and in the emergency account in the amount of $400,000, and had awarded to the Eureka Bank of Eureka, Kan., a deposit in the inactive account in the amount of $40,000, and in the emergency account in the amount of $50,000; all of which matters contained in such bids or proposals, awards and notices, the defendant well knew. The above were the amounts, limits and distribution of the awards of deposits of state moneys in said two banks at the times herein mentioned.

"The defendant well knew at all the times herein mentioned that neither the defendant bank nor the Eureka Bank of Eureka, Kan., had been lawfully designated as provided by law, as a depository to receive a deposit of public moneys in excess of the amounts hereinbefore stated.

"Plaintiff alleges that the defendant bank did not at any time before public moneys were deposited with it under said award, or within thirty days after the making of said award, or at any time whatsoever have on deposit with the state treasurer of the state of Kansas sufficient securities as required by law for either its award or such deposit of public moneys, and on and prior to June 30, 1933, it had forfeited by operation of law any right or claim to act as a depository of state funds, if it ever had any such right in the first instance, which this plaintiff denies.

"Plaintiff further alleges that no securities deposited by the defendant bank with the state treasurer as security for the deposit of such public moneys with the defendant bank, had been approved by the board of treasury examiners of the state of Kansas.

"By reason of the matters herein stated, the state treasurer had no right or authority to deposit any public moneys or funds in the defendant bank, and the defendant bank had no claim or right to act as a state depository, or to receive and retain public moneys, all of which the defendant at all times well knew. The defendant bank had further failed to keep the active deposit of state funds and the emergency deposit of state funds with it in separate and distinct accounts and deposits, but had carried the same as one deposit.

"The defendant bank had never notified the treasurer of the state of·Kan-

sas, or the board of treasury examiners of the state of Kansas of any desire by it to take advantage of sections 2 and 4 of chapter 162, Session Laws of Kansas, 1933, that is, 9-306 and 9-308 of the 1933 Supplement to the Revised Statutes of Kansas, or of section 1, chapter 8, Session Laws of Kansas, 1933, that is, 9-309 of the 1933 Supplement to the Revised Statutes of Kansas, concerning carrying a deposit with the state treasurer of securities for the public moneys deposited with said bank in an amount equal to 70 percent of the amount of deposit awarded to such bank as a depository.

"On and about June 30, 1933, the defendant bank had on deposit with it state moneys wrongfully and unlawfully, and in one lump account in the amount of $1,282,177.57, and at the same time the defendant bank did not have on deposit with the state treasurer securities in the amount and face value to exceed the amount of $401,150, and the securities which the defendant bank had on deposit with the state treasurer at said times had never been approved by the board of treasury examiners of the state of Kansas, and the defendant bank did not have on deposit with the state treasurer securities approved by the board of treasury examiners, in one contingency, equal in amount and face value to the amount of the public moneys deposited with it, and in the other contingency, equal to 70 percent in amount and face value of the public moneys deposited with it.

"In the matters herein set forth, the defendant bank had violated its agreement to faithfully perform the duties required of it as a state depository, and on June 30, 1933, and at all the times herein mentioned, it well knew that the board of treasury examiners had not and could not authorize the deposit of state moneys with said bank, which the bank then held, and it knew such deposit was made up of funds collected by taxation from the people of the state of Kansas for specific public purposes and not for any private use or purpose.

"By reason of the matters herein stated, the defendant bank was legally disqualified from receiving or retaining such deposit of state moneys, or of any claim or title thereto, and it had no right to retain such deposit of public moneys.

"By reason of the premises and the matters and things hereinbefore set forth, the said deposit of public moneys with the defendant bank on or about June 30, 1933, was held by it without authority and in violation of law, and constituted a trust fund held by it solely for the use and benefits of the state of Kansas.

"In addition to the foregoing, the said $150,000 withdrawn and converted by the defendant from the deposit of the state of Kansas with the defendant to its use and benefit as herein stated, by virtue of such withdrawal and conversion became impressed with a new, further and additional trust in the possession of the defendant from and after the instant of such withdrawal, conversion and unlawful application by the defendant bank.

"Fifth. That upon June 30, 1933, the National Bank of Topeka, defendant herein, in disregard and in violation of the rights of the state of Kansas, did knowingly and fraudulently take and apply to the payment of a personal indebtedness and obligation of one Ronald Finney to said National Bank of Topeka, and for other purposes as hereinafter stated, the sum of $150,000 of

the moneys and credits of the state of Kansas so upon deposit in said bank, and did thereby misappropriate and misapply to the use and benefit of the said bank and of others said sum of $150,000 belonging to the state of Kansas, to the loss and damage of the said state in said amount.

"That all of the facts and circumstances concerning the misappropriation and misapplication of said funds and credits are known to the defendant and to its officers; but that so far as this plaintiff has been able to ascertain, said misappropriation and the misapplication of said funds and credits were accomplished in the following manner:

"That for a long time before June 30, 1933, said Ronald Finney had been an active customer of the National Bank of Topeka, and had owed to it large sums of money which had been secured by the deposits of purported warrants of various municipalities of the state of Kansas, and of purported bonds of municipalities within said state; that certain of such indebtedness was represented by purported municipal bonds which said Ronald Finney had gone through the form of selling to the National Bank of Topeka, and which he in turn had agreed to repurchase from said bank; that upon June 30, 1933, there was in said bank more than $150,000 of purported Kansas municipal bonds which said Ronald Finney had placed in said bank, and upon which said bank had advanced to said Ronald Finney the sum of approximately $150,000, and which Ronald Finney had verbally agreed to repurchase from said bank for the amount which said bank had advanced thereon. A list of such bonds, to the best of plaintiff's information and belief, is attached hereto, marked 'Exhibit A,' and made a part of this amended petition. That before June 30, 1933, said bank had demanded of Ronald Finney that he repurchase said bonds from it and pay to said bank the amount which it had advanced to him thereon; that at such time said bank and all its officers knew that such purported municipal bonds then so held by it were either forgeries and worthless, or that they were the property of the school-fund commission of the state of Kansas and of this plaintiff, and that said bank had no right to hold the same.

"That upon said day and through the influence of said Ronald Finney and W. W. Finney, and the defendant bank, as hereinafter stated, there was issued by T. B. Boyd, treasurer of the state of Kansas, a check upon the account of the state of Kansas, in the National Bank of Topeka, payable to the Eureka Bank of Eureka, Kan., for $150,000.

"On and before June 30, 1933, the defendant knew that the relations between Ronald Finney and W. W. Finney, and Thomas B. Boyd, the state treasurer, were close and intimate, and that the said Finneys had and exercised a dominating control over Thomas B. Boyd, and that such bonds either belonged to the state school fund and therefore should be on deposit with the state treasurer, or else were forged, and with such knowledge the defendant, a few days prior to June 30, 1933, orally demanded that Ronald Finney and W. W. Finney withdraw such bonds from the defendant bank and reimburse it for the loan or advance that it had made upon the same to Ronald Finney, and the defendant at the same time knew that if such bonds should not be withdrawn from the defendant, and it should not be reimbursed for its loan or

advance thereupon, the transaction in regard to the bonds would become a matter of public knowledge and a public scandal would arise in regard to the bonds not being kept on deposit with the state treasurer that should be so kept, and forged bonds were being circulated and that many of such bonds were in possession of the defendant, or that there were in the possession of the defendant bonds that belonged to the state of Kansas and which should be in the state treasury; and the defendant knew and intended that such demand for the withdrawal of the bonds and the reimbursement of the bank should be communicated by Ronald Finney and W. W. Finney to Thomas B. Boyd, state treasurer, and that an effort would be made by Ronald Finney and W. W. Finney to obtain wrongfully, from Thomas B. Boyd, the state treasurer, state moneys in order to repay to the defendant the amount that it had loaned or advanced upon such bonds, and that said Thomas B. Boyd, the state treasurer, in order to avoid a public scandal, would permit the moneys of the state to be used wrongfully for such purpose.

"Said treasurer had no power or authority to issue a check upon such account except for the lawful purposes of the state of Kansas and the defendant knew that said check was not issued or to be used for a lawful purpose of the state of Kansas.

"Plaintiff alleges that the defendant bank, on or about June 30, 1933, well knew that the Eureka Bank of Eureka, Kan., had no lawful authority or qualification to receive $150,000 of state moneys, by reason of the fact that its paid-up capital and surplus made a total of only $80,000, and further by reason of the fact that the award of the deposit of state moneys to the Eureka bank by the board of treasury examiners was in the total amount not to exceed $90,000, and that any purported deposit of state moneys with the Eureka bank in the sum of $150,000 was wrongful and unlawful.

"Said check was presented to the defendant bank upon June 30, 1933, the day upon which it was written, and without said check ever having been in said Eureka bank, or having been indorsed by said bank or any of its qualified officers, as defendant well knew. A copy of said check and of all writings, impressions and punctures at any time put thereupon, is attached hereto, marked 'Exhibit B,' and made a part of this amended petition.

"Said check was presented to defendant bank by W. W. Finney, the father and agent of said Ronald Finney, who (that is, said Ronald Finney) was a debtor of said bank and from whom said bank had demanded payment for the bonds mentioned above; that in order to secure to the defendant bank the use of the moneys and credits of this plaintiff then upon trust deposit with the defendant bank in payment for the amount owing to it by Ronald Finney, the defendant bank and W. W. Finney as the agent of the said Ronald Finney, went through the form of making the deposit of said $150,000 check mentioned above, to the account of the Fidelity State & Savings Bank of Emporia, Kan., in the National Bank of Topeka; that the defendant bank withdrew from the deposit of the plaintiff with the defendant bank $150,000, and credited it as aforesaid to the purported deposit to the account of the Fidelity State & Savings Bank of Emporia, Kan.; that at the same time, and as a part of its prearranged scheme to wrongfully and unlawfully obtain said

$150,000 of plaintiff's funds, the defendant caused checks to be drawn and paid upon the purported account so created, payable to the National Bank of Topeka, for the amount owing to said bank by said Ronald Finney; that some other check or checks, in the total amount of about $4,000, were, with the consent of the defendant bank, drawn and paid upon such purported deposit to the account of the Fidelity State & Savings Bank of Emporia, Kan. The date or dates and the totals of each of such other check or checks, and the application thereof are known to the defendant but not known to the plaintiff, but they were not applied to any purpose of the state of Kansas. Whether the authority of W. W. Finney to so act as agent for Ronald Finney was oral or in writing is unknown to the plaintiff.

"By means of the withdrawal of $150,000 upon said check for $150,000 from the trust deposit of the plaintiff with the defendant bank, and the establishment of said purported account in favor of the Fidelity State & Saving Bank of Emporia, Kan., in the National Bank of Topeka, and the drawing of checks upon said account and the payment of the same therefrom, the defendant obtained and applied to its own use the sum of about $146,000 owing to it by said Ronald Finney, and the remainder, about $4,000, of said $150,000 was applied to other purposes than those of the state of Kansas, and all of said $150,000 was withdrawn as aforesaid from the trust deposit of the state of Kansas with the defendant bank and misappropriated and misapplied as aforesaid.

"Plaintiff states that the defendant bank, through all its officers, participated in all of the said transactions and were fully informed thereon and the purposes thereof; that the making and issuing of such check for $150,000, the withdrawal by means thereof of that sum from the trust deposit of the state of Kansas with the defendant bank, the deposit of the amount thereof in the purported account of the Fidelity State & Savings Bank of Emporia, Kan., and the giving and receiving of the checks upon the purported account so created from the moneys and credits of the state of Kansas, and the disbursement by means of checks of said purported account in favor of the Fidelity State & Savings Bank of Emporia, Kan., were not done in good faith on the part of the defendant or the others participating therein, but were done solely as a part of a fraudulent scheme and plan of said Ronald Finney, W. W. Finney and the defendant bank to enable the defendant bank to misappropriate and misapply the moneys and credits of the state of Kansas and to apply the same to the indebtedness of Ronald Finney to said bank, and of the sum of about $4,000 for other purposes as aforesaid; and that the defendant bank did thereby abstract, misappropriate and misapply to its own use and benefit and to the use and benefit of Ronald Finney and of others, the sum of $150,000 of the moneys and credits of the state of Kansas on trust deposit in said defendant bank.

"That at the time when such moneys and credits of the plaintiff were so misappropriated and misapplied said defendant bank and all its officers knew fully concerning all of the facts set out above, and participated in said transactions, and that by reason thereof the state of Kansas has been deprived of the sum of $150,000.

"Sixth. This plaintiff states that upon the 23d day of February, 1934, the state of Kansas, through Roland Boynton, its duly elected, qualified and acting attorney general, made demand upon the defendant, The National Bank of Topeka, for the repayment to the state of Kansas of said sum of $150,000 so misappropriated and misapplied by said bank from the funds of the state of Kansas, with interest thereon, but that said bank has wholly refused to comply with said request.

"Wherefore, the plaintiff prays that it may recover from the defendant the sum of $150,000, with interest thereon at six percentum per annum from June 30, 1933, and for costs of suit."

### EXHIBIT A

(List of bonds mentioned in the petition in the transaction between Ronald Finney and the National Bank of Topeka.)

| Par value | Description |
|---|---|
| $25,000 | Pratt County, Kansas, Rural High School District No. 5, Ref. 4¼%, Bonds Nos. 1-25, Inc. |
| 40,000 | Johnson County, Kansas, School District No. 92, Ref. 4½%, Bonds Nos. 1-40, Inc. |
| 10,000 | Johnson County, Kansas, School District No. 92, Ref. 4½%, Bonds Nos. 41-50, Inc. |
| 10,000 | Norton, Kansas, Int. Imp. 4¼%, Bonds Nos. 47-56, Inc. |
| 7,000 | Cheyenne County, Kansas, School District No. 1, Ref. 4%, Bonds Nos. 3-9, Inc. |
| 20,000 | Eureka, Kansas, Ref. 4¾%, Bonds Nos. 1-20, Inc. |
| 19,000 | Kansas City, Kansas, Gen. Imp. 4½%, Bonds Nos. 32464-32477, Inc., and Bonds Nos. 32488-32492, Inc. |
| 15,000 | Kansas City, Kansas, Condemnation 4¾%, Bonds Nos. 88, 115-119, Inc., 125-128, Inc., 159-160, Inc., 176-178, Inc. |
| 3,600 | Eureka, Kansas, Int. Imp. Pav. Bonds Nos. 6-9, Inc., 4¾%. |
| 2,000 | Brown County, Kansas, Rural High School District No. 5, Bonds Nos. 27 and 29, 4¾%. |

### EXHIBIT B

| | |
|---|---|
| **OFFICE OF THE STATE TREASURER STATE OF KANSAS** | No. 305.    TOPEKA, KANSAS, June 30, 1933<br><br>NATIONAL BANK OF TOPEKA, TOPEKA, KAN.<br>STATE DEPOSITORY<br><br>Pay to the order of    The Eureka Bank    $150,000.00<br>STATE TREAS. KANSAS    $150,000 and 00 cts    DOLLARS<br><br>WILL J. FRENCH,    T. B. BOYD,<br>  State Auditor      State Treasurer<br>By C.,    By GARNET STIERS,<br>  Asst. State Auditor      For Asst. State Treasurer |

(NOTE.—Face of check shows the following perforation:  P A I D   7 1 33.)

Pay to the order of
ANY BANK OR BANKER
Previous Indorsements Guaranteed
THE EUREKA BANK

83-225        EUREKA, KANSAS        83-225

Pay to the order of
ANY BANK OR BANKER
Previous Indorsements Guaranteed
FIDELITY STATE & SAVINGS BANK

83-1301        EMPORIA, KANSAS        83-1301

FRED A. BAIRD, Cashier

THE FIDELITY STATE & SAVINGS BANK
By W. W. FINNEY, Pst.

1        Paid through clearing house        1
or pay to the order of
ANY BANK, BANKER OR TRUST CO.
Prior Indorsements Guaranteed
349
JUL 3 1933
NAT'L BANK OF TOPEKA

44-1        TOPEKA, KANSAS        44-1

H. D. WOLF, Cashier